The Full Commission has reviewed the prior Opinion and Award based upon the record of the proceedings before Deputy Commissioner Amy L. Pfieffer and the briefs and arguments on appeal. The appealing party has shown good ground to reconsider the evidence. Having reconsidered the entire record of evidence, the Full Commission reverses the holding of the Deputy Commissioner and enters the following Opinion and Award.
 * * * * * * * * * * *
The Full Commission finds as fact and concludes as matters of law the following, which were entered into by the parties in an Industrial Commission Form 21 Agreement for Compensation, approved by the Commission on 18 June 1997, and in a pretrial agreement dated 12 August 1998 as:
 STIPULATIONS
1. The parties in this case are subject to and bound by the provisions of the North Carolina Workers Compensation Act.
2. Defendant is a duly qualified self-insured employer, with NCHB-SIF acting as its administrator for workers compensation purposes.
3. Plaintiff sustained an admittedly compensable injury by accident arising out of and in the course of his employment on 25 April 1997.
4. The admittedly compensable injury by accident resulted in injuries to plaintiffs right leg and right wrist.
5. The parties stipulate that despite the figures on the approved Form 21, plaintiffs average weekly wage at the time of injury was $550.00. This yields a compensation rate of $366.69.
6. Defendant paid plaintiff compensation at the rate of $433.36 per week beginning 2 May 1997.
7. On 18 June 1997, the Industrial Commission approved the parties 6 May 1997 Form 21 agreement.
8. Plaintiff returned to work for defendant on or about 11 August 1997. Plaintiff again became totally disabled on or about 3 September 1997.
9. On 13 January 1998 the Industrial Commission approved the parties 3 October 1997 Form 26 supplemental agreement. Pursuant to the Form 26 plaintiff received a second period of temporary total disability compensation beginning 3 September 1997, and continuing until defendant was permitted to suspend plaintiffs benefits by virtue of an approved Form 24 application to terminate or suspend benefits.
10. Stipulated into evidence in this matter were: exhibit one, the Commission proceedings leading to the hearing in the matter consisting of seventeen pages, for historical purposes; exhibit two, thirty-three pages of plaintiffs relevant medical records; and exhibit three, five pages of plaintiffs physical therapy records. Also introduced by defendant and admitted into evidence were defendants exhibits one and two, a letter dated 16 March 1998 concerning the job offered to plaintiff, and that same letter initialed by Dr. Koman and dated 25 March 1998, respectively.
11. By Administrative Decision and Order filed 3 June 1998, Special Deputy Commissioner James C. Gillen approved defendants Form 24 application on the grounds that plaintiff unjustifiably refused suitable employment. The issue addressed in this hearing is whether the defendants Form 24 application was properly approved by the Industrial Commission on the grounds that plaintiff violated the provisions of G.S. 97-32 and G.S. 32.1.
 * * * * * * * * * * *
Based upon the entire evidence of record, the Full Commission enters the following:
 FINDINGS OF FACT
1. On 18 August 1998, the date of the hearing before the Deputy Commissioner, plaintiff, who is right-hand dominant, was a thirty-three year old male with a tenth-grade education. Plaintiffs job experience consists primarily of carpentry work. As of that date, plaintiff had been employed as a carpenter for approximately fifteen years, and during this period he had been involved in all phases of carpentry.
2. On 25 April 1997, plaintiff had been employed as a carpenter for defendant for approximately one month. Plaintiff worked for defendant doing framing, trimming, and punch-out work. Plaintiff worked up to ten hours a day, five to seven days per week and earned $11.00 per hour.
3. Defendant is in the business of framing and doing carpentry work for residential, commercial, and multifamily structures. Generally, it is accepted in the industry that there are four types of carpenters: trim carpenters, frame carpenters, punch-out carpenters, and lead carpenters. All four types of carpenters work for defendant and are interchangeably at times. In addition to their other duties, all carpenters that are employed by defendant assist with site cleanup. Carpenters working for defendant are paid on an hourly basis according to their level of skill, from $7.00 per hour to $12.00 per hour.
4. On 25 April 1997, plaintiff was doing punch-out work, which involves working on small tasks after the structure is up, such as ensuring that doorways are level. In the course of doing the punch-out work on 25 April 1997, plaintiff used a hand-nail gun above his head to nail sheet rock. When stepping on the bucket so that he could reach the job, the bucket slipped and plaintiff fell onto his right side, breaking his right lower leg and a bone in his right wrist just below the thumb. Defendant admitted liability for this injury by accident and began to pay plaintiff total disability benefits.
5. Defendant admitted the compensability of plaintiffs 25 April 1997 injury through an Industrial Commission Form 21 Agreement for Compensation, which was approved by the Commission on 18 June 1997.
6. Plaintiff first sought treatment at the emergency department of New Hanover Regional Medical Center. Plaintiff then came under the care of Dr. Parent, an orthopedist with Wilmington Orthopaedic Group. On 7 May 1997, Dr. Parent performed an open reduction internal fixation of the right tibia to repair plaintiffs fractured lower extremity.
7. Subsequent to 7 May 1997, during the rehabilitation process, plaintiff began to complain more actively of right wrist pain. Testing revealed a scaphoid fracture. Dr. Parent then performed an open reduction internal fixation on plaintiffs wrist on 24 June 1997. Plaintiff treated with Dr. Parent through at least 12 December 1997.
8. Plaintiff continued to have problems with his wrist. Therefore, on 11 March 1998 he was examined by Dr. L. Andrew Koman, a professor of orthopedic surgery at the Bowman Gray School of Medicine. From the exam, Dr. Koman found a scaphoid fracture and nonunion subsequent to the graft. However, Dr. Koman opined that plaintiff could return to restricted, light duty work as of that date with the use of the splint and if he did not use his right hand except to help his left hand.
9. By 15 April 1998, when plaintiff was next examined by Dr. Koman, there was some evidence of healing in plaintiffs right wrist, but significant abnormalities remained. On that date, Dr. Koman opined that plaintiff was physically capable of return to light duty work with the restrictions of not using his right hand for lifting greater than ten pounds and for activities with up to ten pounds of force. Additionally, plaintiff was to wear the splint while working, and was not to use his right hand constantly, even with these restrictions.
10. On 16 March 1998, defendant-employer informed the servicing agent that work within the restrictions assigned by Dr. Koman regarding plaintiffs physical abilities would be available on 19 March 1998. This job would involve light carpentry and site clean-up and would pay $6.00 per hour. Plaintiff would be required to wear his brace and would not be allowed to lift anything or use force over ten pounds with his right hand. On 25 March 1998, Dr. Koman approved this job and opined that it was suitable to plaintiffs physical capacity.
11. By letter dated 31 March 1998, plaintiffs counsel informed defendant that plaintiff would not be returning to work at the job offered to him on the grounds that the job offered is not one found in the competitive labor market. Plaintiff did not return to work in this position.
12. The job offered to plaintiff was suitable insofar as his physical condition and restrictions were concerned. Furthermore, defendant should be commended for offering a job that actually was, instead of merely purportedly being, within plaintiffs restrictions.
13. Although defendant presented evidence that similar positions were filled in all of its constructions sites, there is insufficient evidence that the job offered to plaintiff was readily available in the competitive labor market.
14. Plaintiffs refusal of the job offered by defendant on 25 March 1998 was justified.
15. As the result of his 25 April 1997 injury by accident, plaintiff has been unable to earn any wages in his former position with defendant or in any other employment from 25 March 1998 through the present and continuing.
16. As of 9 September 1998 plaintiff had continued to treat with Dr. Koman. Plaintiff may in the future need a bone graft to heal his right wrist. Dr. Koman prescribed an ultrasound stimulator, which plaintiff used in an attempt to facilitate more fusion and healing such that repeat surgery would not be necessary.
 * * * * * * * * * * *
Based upon the foregoing findings of fact, the Full Commission concludes as follows:
 CONCLUSIONS OF LAW
1. The position offered to plaintiff by defendants on 25 March 1998 was unsuitable in that there is insufficient evidence in the record upon which to find that it was a job readily available in the competitive labor market. G.S. 97-32; Peoples v. ConeMills Corp., 316 N.C. 426, 342 S.E.2d 798 (1986). Plaintiffs refusal of this job was justified and, therefore, the Industrial Commission Form 24 should not have been approved and benefits should not have been suspended as of 25 March 1998. Id.; G.S. 97-18.1.
2. Based upon the Industrial Commission Form 21 Agreement for Compensation, which was approved by the Commission on 18 June 1997, a rebuttable presumption of continued total disability was created in plaintiff favor. G.S. 97-29; Kisiah v. W.R. KisiahPlumbing, 124 N.C. App. 72, 476 S.E.2d 434 (1996), disc.rev. denied, 345 N.C. 343, 483 S.E.2d 169 (1997). Because the job offered to plaintiff was unsuitable and his refusal of it justified, defendant failed to rebut the presumption of continued disability. Id.
3. As the result of his 25 April 1997 injury by accident, the presumption of total disability and the fact that the Industrial Commission Form 24 was approved in error, plaintiff is entitled to be paid by defendant ongoing total disability compensation at the rate of $366.69 per week for the period of 25 March 1998 through the present and continuing until such time as he returns to work or until further order of the Commission. G.S. 97-29.
4. As the result of his 25 April 1997 injury by accident, plaintiff is entitled to have defendant pay for all related medical expenses. G.S. 97-25.
 * * * * * * * * * * *
Based upon the foregoing findings of fact and conclusions of law, the Full Commission reverses the holding of the Deputy Commissioner and enters the following:
 AWARD
1. Defendant shall pay to plaintiff ongoing total disability compensation at the rate of $366.69 per week for the period of 15 March 1998 through the present and continuing until such time as plaintiff returns to work or until further order of the Commission. From the amounts having accrued, this compensation shall be paid to plaintiff in a lump sum. This compensation is subject to the attorneys fee approved herein.
2. Defendant shall pay for all medical expenses incurred by plaintiff as the result of his 25 April 1997 injury by accident.
3. Defendant shall bear the costs, including an expert witness fee of $400.00 to Dr. Koman.
 S/ ________________________ CHRISTOPHER SCOTT COMMISSIONER
CONCURRING:
S/ ____________________ THOMAS J. BOLCH COMMISSIONER
DISSENTING:
S/ ____________________ DIANNE C. SELLERS COMMISSIONER